UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOYCE A. JENNINGS, | ) |
| Plaintiff, | ) |
| vs. | ) Case No.: 07 CV 7163 |
| BLOOMINGDALE'S, INC., | ) |
| Defendant | ) |

**DEFENDANT'S COMBINED MOTION TO: (1) STAY THE ACTION WHILE MOTION IS PENDING; (2) COMPEL ARBITRATION AND (3) DISMISS THE ACTION, OR IN THE ALTERNATIVE, STAY THE ACTION PENDING ARBITRATION**

NOW COMES Defendant, Bloomingdale's, Inc., by and through its attorneys of record, and for its Combined Motion to (1) Stay the action while the motion is pending; (2) Compel arbitration; and (3) Dismiss the action, or in the alternative, stay the action pending arbitration, states as follows:

## I.   INTRODUCTION

As Defendant stated in its Motion to Dismiss, which is presently pending before the Court, this matter is not properly before the Court due to the lack of proper service of process. However, if and when Plaintiff properly serves Bloomingdale's, Bloomingdale's seeks to enforce the arbitration agreement between Plaintiff Joyce A. Jennings ("Jennings") and Defendant Bloomingdale's, Inc., ("Bloomingdale's").[1]  Jennings agreed to have her employment disputes with Bloomingdales resolved through an internal dispute resolution program called "Solutions InSTORE," and the claims Jennings asserts in her lawsuit clearly fall within the ambit of this program. In addition to being the agreed-upon method to resolve

---

[1] Defendant is filing this motion now, so as to not waive its right to enforce the arbitration agreement.

1

disputes between the parties, Solutions InSTORE has ample safeguards to ensure that Jennings' claims are heard fairly, efficiently, and reasonably by a neutral arbitrator. As a result, this Court should require Jennings to honor her agreement by compelling her to arbitrate her claims and it should dismiss this matter pursuant to the agreement between the parties. In the alternative, this lawsuit should be stayed pending the outcome of the arbitration, and all further activity in this action should be stayed pending resolution of this motion.

## II.  STATEMENT OF FACTS

**A.  The SIS Program.**

In 2003, at great effort and expense, Bloomingdale's developed and implemented a comprehensive internal early dispute resolution program called Solutions InSTORE (hereafter "SIS" or "Program"). [Declaration of Lisa Gick, attached hereto as **Exhibit 1**, at ¶¶ 3-4.] SIS is a four-step process for resolving workplace disputes [Ex. 1, ¶ 8.] Its core purpose is to surface and resolve disputes early and fairly. [Ex. 1, ¶ 9.] In Step One of the Program, employees are encouraged to bring grievances to a supervisor or local management team member informally. [Ex. 1, ¶ 12, Ex. A to Ex. 1, p. 3.] If the employee is not satisfied with the Step One decision, she may submit a written request to a senior human resources executive for investigation. [Ex. 1, ¶ 12, Ex. A to Ex. 1, p. 3.] If the employee is not satisfied with the Step Two decision, the employee may proceed to Step Three, by submitting a written Request for Reconsideration. The review will vary depending on the type of claim the employee is making. [Ex. 1, ¶ 12, Ex. A to Ex. 1, pp. 3, 4.] The fourth and final step is for those employees who have elected binding arbitration by not returning an "Arbitration Election Form" within the prescribed time limits. Steps One through Three are available to all employees, including those who opted out of Step

Four, but arbitration is a voluntary choice for the employee. [Ex. 1, ¶¶ 8, 12, Ex. A to Ex. 1 p. 5, Ex B to Ex. 1 pp. 3, 10-11.]

Bloomingdale's is bound by any decision made at each step of the process, even those decisions not in its favor. [Ex. 1, ¶ 10, Ex. B to Ex. 1, pp. 3, 10.] If the employee is not satisfied with a decision at any step, she can appeal the issue to the next step. [Ex. 1, ¶ 10, Ex. A to Ex. 1, pp. 1-2, Ex B to Ex. 1, p. 3.]

Employment with Bloomingdale's is not conditioned on acceptance of the arbitration procedure. [Ex. 1, ¶ 12, 14, Ex. A to Ex. 1, p. 5.] An employee wishing to opt out of this procedure needs only to complete a one-page form declining arbitration and mail it back to the designated SIS post office box in Ohio. [Ex. 1, ¶¶ 12, 13, Ex. A to Ex. 1, pp. 5-7, Ex. B to Ex. 1, p. 3, 10-11, Ex. D to Ex. 1.] The employee's choice to stay in or opt out of Step Four is confidential. [Ex. 1, ¶ 13, Ex. B to Ex. 1, p. 3)] Employees who decline arbitration mail their opt-out forms to the SIS post office box in Ohio and no one in an employee's local workplace has knowledge of the decision or access to this information. [Ex. 1, ¶ 13.] Only a select few company employees, located in Ohio, have access to an employee's decision to opt out of Step 4. [*Id.*] The Program strictly prohibits retaliation against employees who use, or opt out of the SIS program. [Ex. 1, ¶ 14, Ex. B to Ex. 1, p. 5).] Such actions would seriously undermine the core purpose of the program, which is to surface and resolve disputes quickly and fairly. [Ex. 1, ¶ 14.]

Under SIS arbitration, with limited exceptions not pertinent here, "all employment-related legal disputes, controversies or claims arising out of, or relating to, employment or cessation of employment shall be settled exclusively by final and binding arbitration administered by the American Arbitration Association ('AAA')…before a neutral, third-party

Arbitrator…" [Ex. 1, ¶ 11, 12, 18, Ex. A to Ex. 1, p. 5.] "Employment-related claims" include "claims arising under . . . Title VII of the Civil Rights Act of 1964,… 42 U.S.C. § 1981…" [Ex. 1, ¶¶ 16, 17, Ex. A to Ex. 1, p. 6.]

Once the parties agree to arbitrate their claims, "neither the Associate nor the Company can file a civil lawsuit in court against the other party relating to such claims." [Ex. 1, ¶¶ 11, 16, 17, Ex. A to Ex. 1, p. 7.] Thus, if an employee files a lawsuit in court to resolve claims subject to arbitration, the Program provides that the court shall dismiss the lawsuit and send the claims to arbitration. [*Id.*] At least two sections of the arbitration agreement specifically reference the Federation Arbitration Act, 9 U.S.C. §1, <u>et seq.</u> [Ex. 1, ¶¶ 11, 16, Ex. A to Ex. 1, p. 18.] This program, as described above, was rolled out to Bloomingdale's in the Fall of 2003. [Ex. 1, ¶¶ 3-4.]

B. **Jennings Was Aware of the Solutions InSTORE Program and Chose to be Bound By Step 4 Arbitration.**

Bloomingdale's hired Jennings on November 24, 2004 to work as a sales associate in its North Michigan Avenue store. [Declaration of William Ruhrkraut, attached hereto as **Exhibit 2**, at ¶ 7]. Prior to Jennings' first day of work and also again during her new hire orientation, Jennings was given detailed information about the SIS program and was provided the ability to opt-out of the Step 4 arbitration portion of the Program. [Ex. 2, ¶¶ 8-16]. Jennings did not opt out of the arbitration portion of the Program. [Ex. 1, ¶ 21].

1. **The Application**

Employees hired after 2003, initially learn about the SIS program from their employment application and then receive more specific information during their orientation. In Jennings' case, she was given her new-hire paperwork and employment application for completion prior to her first day of work. [Ex. 2, ¶ 8, Ex. A to Ex. 2, Ex. D to Ex. 2.]. The

4

application that Jennings completed refers to the SIS program, and provides many details of the Program. [Ex. 2 ¶¶ 8-10, Ex. A to Ex. 2.] It informs employees that if they are offered a position, they will have thirty (30) days from the date of hire to decide if they want to participate in binding arbitration. [*Id.*] It also encourages employees to ask questions about the program. [*Id.*] Jennings signature appears on page two of her Application and is dated November 19, 2004. [Ex. 1, ¶ 9, Ex A to Ex. 2.][2]

### 2. The SIS Early Dispute Resolution Brochure

An employee learns further details of the Program through a brochure entitled "Early Dispute Resolution," which was a part of Jennings' new-hire paperwork. [Ex. 2 ¶ 10, and Ex. B to Ex. 2.] The brochure summarizes certain provisions from the Plan Document and alerts the employee to the various methods she may use to obtain a copy of the entire Plan Document. The brochure emphasizes, among other things, that the arbitration process is binding, covers disputes relating to the employee's employment, is a waiver of the right to a civil action and jury trial, and that the employee may opt to not participate in the arbitration portion of the Program. [Ex. 1 ¶¶ 12, 16, 17 and Ex. B to Ex. 1, pp. 10-12].

Employees verify receipt of the Early Dispute Resolution brochure by physically or electronically signing a "Solutions InSTORE New Hire Acknowledgement" form. Jennings' acknowledgement, like the rest of her paperwork, was completed physically and indicates that she understood the requirements if she wished to opt-out of the program. [Ex. 2 ¶¶ 8, 13, Ex. C to Ex. 2]. Jennings' signed and dated her SIS New Hire Acknowledgment form on November 19, 2004. [Ex. 2, ¶ 13, Ex C to Ex. 2.]

---

[2] Jennings' social security number has been redacted from any exhibits submitted herewith in order to protect her privacy and prevent any unauthorized use of this identifying information.

### 3. The Election Form

A copy of the one-page Election Form is stapled to the center of the Early Dispute Resolution brochure. [Ex. 2 ¶14]. The election form, as with the brochure itself, notifies the employee of her right to opt-out of the arbitration portion of the Program and explains how to decline arbitration. [*Id.* and Ex. D to Ex. 2]. The form explains that to opt-out of the Program, the employee must complete the Election Form and return it back to the Office of Solutions InSTORE in Ohio, postmarked no later than 30 days from her hire date. [Ex. 2 ¶¶ 9, 13, Ex C to Ex. 2, Ex. D to Ex. 2, Ex. 1 ¶¶ 12, 13].

### 4. The Plan Document

As noted above, the SIS New Hire Acknowledgement form explains to employees how to access a copy of the SIS Plan Document. The twenty-page Plan explains in detail SIS's 4-step process. Fourteen pages alone are devoted to arbitration. [Ex. 1 ¶ 11, Ex. A to Ex. 1, pp. 5-18).] The Plan explains, among other things, that if the employee agrees to arbitration, that is the exclusive way to resolve disputes. [Ex. 1 ¶¶ 11, 16, 17, Ex. A to Ex. 1, p. 7) ("By agreeing to arbitration, the Associate and the Company agree to resolve through arbitration all claims described in or contemplated by Article 2 above…neither the Associate nor the Company can file a civil lawsuit…relating to such claims.")]

### 5. Other Notifications Jennings Received About the SIS Program.

In addition to the employment application and the distribution of the Early Dispute Resolution brochure and Election Form, Bloomingdale's has other measures to ensure that newly hired employees are aware of the Program details. [Ex. 2 ¶¶ 15-16]. The SIS website – www.employeeconnection.net – provides employees with access to the entire SIS Plan

Document, as well as information about filing a concern, contact information, and information on how to access the American Arbitration website. [Ex. 2 ¶ 12].

Also, since the roll-out of the program in 2003, SIS posters referring to "final and binding" Step 4 arbitration have been available at the Bloomingdale's stores in Illinois. The posters in the North Michigan Avenue store where Jennings worked could be found in areas frequented by employees, such as the employee lounge, the employee locker room, the Human Resources office, the employee bulletin board and the employee entrance to the stores. [Ex. 2 ¶ 16]. Finally, as part of a new employee's introduction to the company, in addition to distributing the Early Dispute Resolution brochure, employees also view a video about the SIS program during orientation. [Ex. 2 ¶ 15].

### 6.     Jennings Did Not Opt-Out of Step 4 Arbitration.

The Office of Solutions InSTORE has regular procedures for processing Election Forms that are mailed to the Ohio address. Any Election Form that is received is date-stamped when it is opened. The form is then reviewed for completeness and then loaded into the PeopleSoft Human Resource System. This System is used by the Office of Solutions InSTORE to record opt-out status.[3] Hard copies of Election Forms are also maintained by the Office in filing cabinets and arranged according to social security number. [Ex. 1 ¶¶ 19-21].

The Office of Solutions InStore reviewed the PeopleSoft Human Resource System and the office filing cabinets and determined that Jennings never returned an opt-out form. Accordingly, Jennings did not opt out of arbitration. [Ex. 1 ¶¶ 20-21].

---

3 Access to the area of the PeopleSoft Human Resource System in which the employee's election is recorded is limited to viewing only by the staff of the Office of Solutions InSTORE and to a very limited number of individuals responsible for data input and system maintenance. [Gick Decl., ¶ 18].

### III.    ARGUMENT

**A.    Jennings' Claims Come Within The Ambit Of Her Arbitration Agreement.**

On or about December 20, 2007, Jennings filed a lawsuit alleging racial discrimination under Title VII and 42 U.S.C. §1981.[4]  The Court has subsequently dismissed Jennings' Title VII claims, therefore the only claim that remains is her claim under 42 U.S.C. §1981.  The SIS program Jennings agreed to specifically provides that the types of employment-related claims that are to be arbitrated include "claims arising under . . . 42 U.S.C. §1981, as amended, including the amendments of the Civil Rights Act of 1991. . . " [Ex. A to Ex. 1, p. 6)].  Because the facts and issues alleged in Jennings' Complaint clearly arise out of and relate directly to Jennings' employment and because her claim is an enumerated claim within the scope of the Program provisions, her claims are covered by the SIS program and its arbitration provisions.

**B.    Public Policy Favors Enforcement of Arbitration Agreements.**

In 1925, Congress enacted the Federal Arbitration Act ("FAA") to reverse decades of judicial hostility toward arbitration agreements and to place these agreements on the same footing as other contracts. *See Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 225-26 (1987).  Arbitration clauses like the one at issue in this case "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.*; 9 U.S.C. § 2.  "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983); *see also Volt Info. Sci., Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989).

---

[4] No summons issued on the December 20, 2007 Complaint, and the Court dismissed Plaintiff's claims under Title VII as time-barred.  Plaintiff subsequently filed a Complaint on May 14, 2008 and a Summons issued the next day.  Defendant filed a Motion to Dismiss based on improper service, which is presently before the Court.

Guided by the FAA, the United States Supreme Court has repeatedly held that arbitration agreements are to be read liberally in order to effectuate their purpose. *Moses H. Cone¸ supra*, 460 U.S. at 25; *see also Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 90-91 (2000); *Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 62-63 (1995). A court may not deny arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986).

In Illinois, arbitration is favored as a voluntary means of resolving disputes. *McIntyre v. Household Bank*, 216 F.Supp.2d 719, 722 (N.D.Ill. 2002); *Salsitz v. Hreiss*, 196 Ill.2d 1, 13, 761 N.E.2d 724, 731 (2001). Illinois law, like federal law, holds that any doubt should be resolved in favor of arbitration. *Maroney v. Triple "R" Steel, Inc.*, 2005 WL 1950404, at *2 (N.D.Ill. 2005) (attached hereto as Exhibit 3) (citing *Volt, supra*, 489 U.S. at 476).

Indeed, arbitration has become an accepted and favored method of resolving disputes, especially in employment disputes such as this one. "Employees fare well in arbitration with their employers – better by some standards than employees who litigate, as the lower total expenses of arbitration make it feasible to pursue smaller grievances and leave more available for compensatory awards." *Oblix, Inc. v. Winiecki,* 374 F.3d 488, 491 (7th Cir. 2004).

C.     **The Parties Entered Into an Enforceable Arbitration Agreement.**

On a motion to compel arbitration, the court considers two key issues: (1) whether the parties formed a valid and enforceable agreement to arbitrate and (2) whether the agreement to arbitrate encompasses the underlying dispute. *Dean Witter Reynolds, Inc., v. Byrd***,** 470 U.S. 213, 218 (1985); *Bauer v. Morton's of Chicago,* 2000 WL 149287, at *2 (N.D.Ill.) (attached hereto as Exhibit 4). 9 U.S.C. §§ 2, 3; *see also* 710 ILCS 5/1 §1. A written agreement to

submit a controversy to arbitration is valid, enforceable and irrevocable, save upon grounds as exist under law or in equity for the revocation of any contract. 9 U.S.C. § 2; *see also*, 710 ILCS 5/1 §1.

As to the first consideration, a valid arbitration agreement exists. In making the determination as to validity, the court "should employ state law principles of contract interpretation, resolving ambiguities in favor of arbitration." *McIntyre*, 216 F.Supp.2d at 722. For these purposes, the law of "the state where the employment and termination took place" should govern the contract interpretation. *Michalski v. Circuit City Stores, Inc.*, 177 F.3d 634, 636 (7th Cir. 1999). Jennings was employed and terminated in the State of Illinois, therefore the law of the State of Illinois shall apply. Under general principles of Illinois contract law, a valid and enforceable contract contains: (1) an offer; (2) acceptance; and (3) consideration. *Sheller v. Frank's Nursery & Crafts, Inc.*, 957 F.Supp. 150, 154 (N.D.Ill. 1997).

**1. Jennings Accepted Bloomingdale's Offer to Arbitrate, and the Parties Intended That the Agreement Be Mutual and Binding.**

All of the elements of contract formation are satisfied here. Bloomingdale's extended an offer to Jennings to arbitrate at and around her time of hire, by way of the Employment Application, the SIS Dispute Resolution Brochure, the SIS video, the posters and the website, among other things. Jennings accepted this offer to arbitrate by declining to complete and return the Election Form, which would have signified her intention to opt out of the arbitration program. Therefore, by choosing not to return the "opt-out" Election Form, despite the opportunity to do so, and also by not contesting the confirmatory communications (even though she knew the company would rely on her silence as assent), Jennings manifested her consent to participate in the provisions of the Program, which compel that any employment dispute be arbitrated.

The Court of Appeals for the Seventh Circuit has upheld arbitration agreements where employees manifested assent by failing to indicate their preference not to participate in arbitration. *Michalski,* 177 F.3d at 636 (holding that an employee "chose – by not signing the opt-out provision – to be bound by the [arbitration agreement].") The *Michalski* court went on to state, "It does not follow that this court would invalidate an arbitration agreement such as this one, when we have previously held that a non-optional, mandatory arbitration agreement is valid." *Id.* at 636. The Seventh Circuit has also noted that arbitration agreements do not have to be signed by the employee in order to show acceptance. *Tinder v. Pinkerton Security* 305 F.3d 728, 736 (7th Cir. 2002); *Scaffidi v. Fiserv, Inc.*, 2007 WL 648178, at *2 (7th Cir.) (attached hereto as Exhibit 5) (arbitration agreements do not have to be signed to be valid).

Therefore, Jennings intentionally entered into a binding and enforceable arbitration agreement with Bloomingdale's, and the agreement was to be mutual and binding upon both parties.

### 2. Sufficient Consideration Supports the Parties' Agreement.

Under Illinois law, the common law principle of consideration "requires only that both parties be bound by the agreement." *Medina v. Hispanic Broadcasting Corp.*, 2002 WL 389628, at *2 (N.D.Ill.) (attached hereto as Exhibit 6) (citing *S.J. Groves & Sons Co. v. States*, 444 N.E.2d 131,134 (Ill. 1982) (overruled on other grounds). The Seventh Circuit has found sufficient consideration exists where the parties mutually agreed to arbitrate with each other. *Medina*, 2002 WL 389628, at *2 (Ex. 5); *Michalski,* 177 F.3d at 636-637. The company's agreement to bind itself to the arbitration agreement and to foreclose its right to seek redress in the courts, is sufficient consideration. *Tinder,* 305 F.3d 728 (employee's continued

11

employment and employer's promise to bind itself to arbitration policy is sufficient consideration for employee's promise to arbitrate).

The SIS Plan Documents and Brochure (Ex. A to Ex. 1, Ex. B to Ex. 1.) demonstrate that the agreement to arbitrate was mutual and binding upon both parties. [Ex. 1 ¶ 11, Ex. A to Ex. 1, p. 7.] Therefore, there was sufficient consideration for this contract, and the parties entered into a valid and enforceable agreement to arbitrate.

### 3. The Arbitration Agreement Covers All Of Jennings' Claims.

Having established that the parties formed a valid and enforceable agreement to arbitrate by satisfying the general principles of Illinois contract law, the court's only other consideration is whether the agreement encompasses this dispute. *Dean Witter Reynolds,* 470 U.S. at 218; *Bauer* 2000 WL 149287, at *3 (Ex. 4), 9 U.S.C. §§ 2, 3; *see also* 710 ILCS 5/1 §1.

"Courts must observe the strong federal policy favoring arbitration by liberally and broadly construing contractual language concerning the scope of arbitral issues and resolving all doubts as to coverage in favor of arbitration." *McIntyre,* 216 F.Supp.2d at 722. A court may not deny a party's request to arbitrate an issue "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960); *United Steel, Paper and Forestry, Rubber, Mfg., Energy, Allied Indus. and Serv. Workers Int'l Union v. Trimas Corp.,* 2008 WL 2609253, at *4 (7th Cir.) (attached hereto as Exhibit 7). The primary objective of contract construction is to give effect to the intention of the parties as ascertained from the words used in the contract. *Sheller*, 957 F.Supp. at 154 (citing *Harrison v. Sears, Roebuck & Co.*, 189 Ill.App.3d 980 (Ill.App.Ct. 1989).

As the Seventh Circuit Court of Appeals recently pointed out, the analysis of the scope of the agreement "begin[s] with the text of the arbitration clause," *United Steel*, 2008 WL 2609253, at *4 (Ex. 7), and "in construing language, we strive for a commonsense result." *Id.* The clause at issue here states:

> "employment-related claims… arising under federal, state or local statutory or common law shall be subject to arbitration… these claims include, but are not limited to, claims arising under… 42 U.S.C. §1981, as amended, including the amendments of the Civil Rights Act of 1991." (Ex. A to Ex. 1, p. 6)

It is clear that Jennings' claim – brought under 42 U.S.C. §1981 – is encompassed under the scope of this arbitration clause. There is no question that the clause provided in the SIS Program is broad enough to cover the claim at issue here, and it is quite clear that the claim is specifically designated as one that the parties to the agreement contemplated would be arbitrable because (a) her cause of action is specifically listed in the Plan Documents under Article 2 "Claims Subject to or Excluded from Arbitration" as a claim that is "subject to" arbitration, (b) the same section states that all employment-related claims are to be arbitrated, and (c) Article 2 lists in detail claims that are not subject to arbitration, and Jennings' 42 U.S.C. § 1981 claim is not one of the enumerated exclusions. ( Ex. A to Ex. 1, p. 6.). Therefore, it is clear that the bargain the parties made was to arbitrate employment disputes, and specifically Jennings' type of employment suit, and therefore the Court should compel Jennings to arbitrate the issues raised in the present lawsuit.

**D. The SIS Program Contains Sufficient Safeguards to Protect Jennings' Ability to Have Her Claims Decided Fairly and Efficiently.**

The SIS program has also set forth certain safeguards to protect employees who have agreed to the terms of arbitration under the program, such as: a) a neutral arbitrator is selected [SeeEx. 1 ¶ 11, Ex. A to Ex. 1, p. 9)]; b) discovery is permitted [See Ex. 1 ¶ 11, Ex. A to Ex. 1 ,

13

pp. 10-12.] arbitrator has same power and authority as a judge to award relief [Ex. 1, ¶ 11, Ex. A to Ex. 1, p. 16).]; d) any ultimate remedy allowed under applicable law is available [Ex. 1, ¶ 11, Ex. A TO Ex. 1, p. 17).]; and e) employee bears minimal cost [Ex. 1, ¶¶ 11, 18(a), Ex A to Ex. 1, pp. 16-17).]  Unlike some arbitration programs, the SIS Program does not restrict the applicable statute of limitations, instead any limits are set by the relevant law.  [Ex. 1, ¶¶ 11, 18(a), Ex A to Ex. 1, p. 8).]

In addition, if the employee consults with, or is represented by, an attorney for the arbitration, the company reimburses her legal fees up to $2,500 over a continuously rolling 12-month period. This amount is paid even if the employee is not successful at the arbitration.  If the employee is not represented by an attorney, the company will reimburse the employee for incidental costs up to $500 over the same rolling period.  The arbitrator has the same power as a judge to order the company to pay the employee's fees and costs if the plaintiff prevails. [Ex. 1, ¶¶ 11, 17, Ex. A to Ex. 1, pp 16-17).]

**F.    This Action Should Be Stayed Pending a Determination of Arbitration, And If Arbitration Is Ordered, This Action Should Be Dismissed To Allow The Matter To Proceed To Arbitration Or, At A Minimum, Should Be Stayed Until The Matter Is Arbitrated.**

Assuming that this court has personal jurisdiction over Bloomingdale's, Bloomingdale's respectfully requests that all further action in this matter be stayed until a determination is made as to whether arbitration is appropriate.[5]  If the Court finds the arbitration agreement to be valid and enforceable, Bloomingdale's respectfully requests that this Court dismiss the action with prejudice – pursuant to the terms of the arbitration agreement – and allow Jennings to pursue

---

[5] Bloomingdale's filed a Motion to Dismiss for lack of personal jurisdiction due to improper service, which is presently pending before the court.  Were the Court to deny Bloomingdale's Motion to Dismiss, then Bloomingdale's seeks the relief set forth in this Section F.

14

her claims through arbitration per Article 3 of the Plan Document.  [Ex. 1, ¶ 11, Ex. A to Ex. 1, p. 7).]  By not opting out, Jennings agreed to this provision and dismissal is appropriate.

In the alternative, Bloomingdale's submits that, at a minimum, this Court stay this litigation both while this motion is pending and pending resolution of the arbitration.  9 U.S.C. § 3 (in suit involving "any issue referable to arbitration under an agreement" court shall "stay the trial of the action until such arbitration has been had").  A stay will also avoid wasting the efforts and resources of the Court and the parties.

WHEREFORE, Defendant, Bloomingdale's Inc., respectfully requests that the Court enforce the parties' agreement to arbitrate and compel Jennings to arbitrate her claims against Bloomingdale's.  In addition, Bloomingdale's requests that the Court stay the action until the arbitration issue has been resolved, and if arbitration is ordered, dismiss the pending action with prejudice, or at a minimum, stay the proceedings until the arbitration is completed.

Dated this 28th day of July, 2008.                    /s/ Jill A. Cheskes

                                                                Jill A. Cheskes, Esq.
Smith Amundsen, LLC
150 N. Michigan Ave. Ste 3300
Chicago, Illinois 60601
312-894-3367
312-894-3210 (Fax)
*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I, _____, certify that on this ____ day of July, 2008, I caused true and correct copies of Defendant Bloomingdale's, Inc.'s Motion to Dismiss to be served by U. S. mail, pre-paid postage to:

Joyce A. Jennings, Plaintiff
P.O. Box 5688
Monroe Street, #G
Evanston, IL  60204