## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

JOYCE A. JENNINGS,　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　 )
　　　　　　Plaintiff,　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　 )　Case No.: 07 CV 7163
　　　vs.　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　 )
BLOOMINGDALE'S, INC.,　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　 )
　　　　　　Defendant　　　　　　　　　 )

## DECLARATION OF LISA GICK IN SUPPORT OF DEFENDANT'S MOTION TO: (1) STAY THE ACTION WHILE THIS MOTION IS PENDING; (2) COMPEL ARBITRATION AND (3) DISMISS THE ACTION OR, IN THE ALTERNATIVE, STAY THE ACTION PENDING ARBITRATION

I, Lisa Gick, declare and state as follows:

1.　　　I submit this declaration in support of Defendant Bloomingdale's Motion To (1) Stay the Action While this Motion is Pending; (2) Compel Arbitration and (3) Dismiss the Action, or in the Alternative, Stay Action Pending Arbitration. The facts stated here are within my personal knowledge. If called upon to do so, I could testify to these facts.

2.　　　I am employed as Operating Vice President for Macy's, Inc., parent company to Macy's Retail Holdings ("MRHI")." Bloomingdale's, Inc. is a wholly owned subsidiary of MRHI and operates department stores throughout the country that are known as "Bloomingdale's."

3.　　　In my capacity as Operating Vice President, I am responsible for the management and administration of the Solutions InSTORE Early Dispute Resolution Program. I was responsible for the development and implementation of the Solutions InSTORE program in 2003. This included, for example, communications development, training and infrastructure

development, and management of staffing, budgeting and systems needs. I continue to supervise the Solutions InSTORE program and the employees whose sole job is administering the program.

### The Solutions InSTORE Program

4.    In 2003, Macy's implemented Solutions InSTORE, which is a comprehensive early dispute resolution program, for its divisions including Bloomingdale's. The Solutions InSTORE Program is the same as the one used for all Macy's and Bloomingdale's stores. I am responsible for supervising the Solutions InSTORE program for both Macy's and Bloomingdale's stores.

5.    To support the Solutions InSTORE program, an Office of Solutions InSTORE was established within our Employee Relations Department in Cincinnati, Ohio. In doing so, the company did extensive factual research concerning alternative dispute resolution programs. We wanted to establish an early dispute resolution program that would be supportive of employees across the company in finding fair and early resolution to workplace concerns. Significant resources (financial and otherwise) were dedicated, among other things, to build the proper infrastructure (including an Office of Solutions InSTORE), to develop effective resources and processes, to train employees across the company to manage according to the program provisions and to execute the program effectively, and to communicate the program by multiple means to all eligible employees.

6.    The Office of Solutions InSTORE is staffed with four employees who have no responsibilities other than administering the Solutions InSTORE program. These four associates are the Senior Manager, the Manager, and two Associate Managers of Solutions InSTORE. This staff reports to me. Together, these four associates manage the day-to-day Solutions InSTORE

2

program. Their responsibilities include (a) managing associate calls to the toll-free Solutions

InSTORE phone number, (b) conducting investigations, (c) managing administration associated

with program execution, and (d) training professionals throughout the company on topics such as

facilitating Step 3 Peer Review Panels, managing investigations, and facilitating early resolution.

The Office of Solutions InSTORE has its own dedicated budget from which the program is

administered.

      7.     The Solutions InSTORE program was rolled out in Fall 2003 with an effective

date of January 2004 for all then-current employees of all Bloomingdale's stores, including those

at the Bloomingdale's store on North Michigan Avenue in Chicago.

      8.     The Solutions InSTORE program is a four-step process for resolving workplace

disputes. Its final step is binding arbitration of an employee's or the company's employment-

related dispute - unless the employee has chosen not to participate in the arbitration portion of

the program.

      9.     The purpose of the Solutions InSTORE program is to surface and resolve disputes

as early and fairly as possible.

      10.     Under the terms of the Solutions InSTORE program, Bloomingdale's is bound by

the decisions made at each step of the program. In contrast, the employee is free to appeal each

decision to the next step of the program, up through Step 4 (arbitration) if elected. The employee

drives the process.

      11.     The Solutions InSTORE program contains four separate steps for resolution of

work-related problems. The four steps are explained in depth in the Solutions InSTORE Plan

Document. A true and correct copy of the Solutions InSTORE Plan Document is attached as

**Exhibit A**.

12.     The Solutions InSTORE program's four steps are as follows:

**Step 1:**  The Solutions InSTORE Program begins with "Open Door."  Employees are encouraged to bring their concerns to a supervisor or local management team member for discussion and resolution.

**Step 2:**  If the employee is not satisfied with the Step 1 decision, he or she may proceed to Step 2.  Here, the employee submits a written request for review to the Office of Senior Human Resources Management of the Macy's or Bloomingdale's division where he or she works.  A human resources executive not involved in the underlying decision conducts an investigation.

**Step 3:**  If the employee is not satisfied with the Step 2 decision, and the claim involves legally protected rights, the employee may proceed to Step 3 and the request is directed to the Office of Solutions InSTORE in Cincinnati, Ohio.  If the dispute involves claims related to layoffs, harassment, discrimination, reduction in force, or other alleged statutory violations, a trained professional investigates it thoroughly and objectively.  Other disputes, including disputes over termination and final warnings, may be submitted to a Peer Review Panel.  In either case, the dispute is decided by the Peer Review Panel or the Office of Solutions InSTORE and not by local/divisional management.

**Step 4:**  The fourth and final step of the Solutions InSTORE program is binding arbitration.  Arbitration under the Solutions InSTORE program is not a mandatory term and condition of employment.  Employees may agree to employment with or without Step 4 arbitration.  Agreeing to Step 4 is voluntary.  All employees are given the opportunity to decline to be covered by Step 4 arbitration.

13.    The employee's choice whether to opt out of Step 4 is kept confidential. We deliberately designed the opt-out procedure so that local management is not aware of an employee's election. All employees are asked to mail the opt-out election forms to Ohio so that no one at Bloomingdale's stores or other work locations has access to individual election information, including returned forms. Only a select few company employees have access to the database of employee elections. Individual elections are accessed only when that information becomes relevant to handling an employee's claim.

14.    Under the program's provisions and in practice, Bloomingdale's may not retaliate against any employee who uses the Solutions InSTORE program. Such retaliation would defeat the program's core purpose, which is to surface and resolve disputes as early and fairly as possible. Any workplace is subject to employee concerns that need addressing and we actively want employees to bring up issues through Solutions InSTORE. The company communicates its no-retaliation policy to its employees as part of the Solutions InSTORE program information. The program materials, such as the "Early Dispute Resolution" brochure, explain that the company will not tolerate retaliation. A true and correct copy of the Early Dispute Resolution brochure is attached as **Exhibit B**. [*See* Exhibit B, p. 4.]

15.    Step 4 arbitration proceedings are administered by the American Arbitration Association ("AAA").

16.    If an employee elects to be covered by Step 4 arbitration, the agreement covers all eligible employment-related claims raised on or after January 1, 2004 by an employee, or by Bloomingdale's and/or any of its unincorporated operating divisions, whether arising under federal, state or local law. The Plan Documents specifically list that "claims arising under... 42 U.S.C. § 1981, as amended, including the amendments of the Civil Rights Act of 1991..." are

within the types of claims that are subject to arbitration under the Program. [*See* Exhibit A, p. 6.] Certain claims are not subject to arbitration, such as those brought under an employee pension or benefit plan, those for state employment insurance, or those under the National Labor Relations Act. [*See* Exhibit A, p. 6.]

17.    By agreeing to arbitration, "the Associate and the Company agree to resolve through arbitration all claims described in or contemplated by Article 2" of the Plan Documents. [*See* Exhibit A, p. 7.] "This means that neither the Associate nor the Company can file a civil lawsuit in court against the other party relating to such claims. [*Id.*] "If a party files a lawsuit in court to resolve claims subject to arbitrations, both agree that the court shall dismiss the lawsuit and require the claim to be resolved through the Solutions InSTORE program." [*Id.*].

18.    Other aspects of Step 4 arbitration include:

(a) the employee bears minimal costs equal to one days' wage, not to exceed a maximum of $125 for a filing fee;

(b) the company will have an attorney present at the arbitration only if the employee decides to have an attorney present at the arbitration;

(c) the company will reimburse the employee's legal fees up to $2,500 each year (calculated on a continuously rolling 12 month period);

(d) discovery is permitted;

(e) the arbitrator has the same power and authority as a judge to grant any ultimate relief under applicable law, including attorneys' fees and costs; and

(f) unless the Plan Document provides otherwise, the arbitration is administered under AAA's National Rules for the Resolution of Employment Disputes,

renamed the "Employment Arbitration Rules and Mediation Procedures" as of July 2006.

## Processing Election Forms

19.     The Office of Solutions InSTORE has regular procedures for processing Election Forms that are mailed to the Ohio address. Any Election Form that is received is date-stamped when it is opened. The form is then reviewed for completeness and then loaded into the PeopleSoft Human Resource System. The PeopleSoft Human Resource System is a third party software database that includes employment information such as an employee's identification number, address, job code, title, location, and other items. Macy's and its divisions, including Bloomingdale's, customarily rely on the PeopleSoft Human Resource System to maintain accurate employee data. Access to the Solutions InSTORE information on the PeopleSoft Human Resource System is limited to the staff of the Office of Solutions InSTORE and to a very limited number of individuals responsible for data input and system maintenance. This System is used by the Office of Solutions InSTORE to record opt-out status.

20.     The PeopleSoft Human Resource System was reviewed to determine whether Joyce Jennings had returned an Election Form after her employment began. She did not return an Election Form according to the PeopleSoft Human Resource System.

21.     The Office of Solutions InSTORE also keeps the returned Election Forms in file cabinets, organized by social security number. The appropriate area of the correct file cabinet was also reviewed and no Election Form for Ms. Jennings was found. I have no reason to believe that Ms. Jennings ever returned an Election Form.

I declare under penalty of perjury under the laws of the State of Ohio that the above is true and correct.

Executed this _16th_ day of July, 2008, at Cincinnati, Ohio.

_____
LISA GICK

BEFORE ME, a Notary Public in and for the State of Ohio on this _16th_ day of _July_____, 2008, personally appeared _Lisa Gick_____ to me well known to be the person described in and who signed the foregoing, and acknowledged to me that she executed the same freely and voluntarily for the uses and purposes therein expressed.

WITNESS my hand and official seal the date aforesaid.

_____
(NOTARY PUBLIC)

JEANNETTE P. MAXEY
Attorney at Law
Notary Public, State of Ohio
My Commission Has No Expiration Date.
Section 147.03 R.C.

8

**EXHIBIT A**

Federated Department Stores, Inc. ("Federated") and its divisions (the "Company") care about their people. We know that from time to time Associates can have problems at work...and that even routine differences can get bigger when there are no resources to help solve them.

The Company set out to find a more effective way to resolve workplace disputes - one that would benefit everyone involved. Our open door policy seemed a good place to start. Over the years, the Company has had a policy to help employees handle problems by working with supervisors and/or Human Resources. To make this policy even better known and improve its effectiveness, the Company is adding new features, which together with Open Door will make up our early dispute resolution program: Solutions InSTORE.

Because we are convinced that a full internal review of differences is the quickest and most productive way to resolve these disputes, maintain good working relationships and avoid unnecessary confrontations, Open Door (**Step 1**) continues to be the foundation of our program and must be used before taking the next step.

If you are not satisfied with the result, you can request to have your issue reviewed by the Office of Senior Human Resources Management (**Step 2**). The Senior Vice President or another Human Resources executive who was not involved in the Open Door process will review your issue and get back to you in writing. If you still are not satisfied with the result, for those situations involving legally protected rights, you can make a Request for Reconsideration (**Step 3**) which may provide you with the option of either Peer Review, a process where a panel of your peers will decide the outcome of your dispute, or review by the Office of Solutions InSTORE, located in Federated's Employee Relations Department in Cincinnati.

| PROGRAM STEPS:





In the rare situations that, for whatever reason, your dispute cannot be resolved internally, Solutions InSTORE provides for a private, professional way *outside* the Company to resolve them. You can request Arbitration **(Step 4)**. This outside process is led by an Arbitrator, an objective professionally trained third-party, who will render a final decision that is binding on both the Company and you. Nothing in the Solutions InSTORE program, however, prevents you from filing a charge or complaint with a government administrative agency like the EEOC, for example. The program will take effect on January 1, 2004 for all newly hired and current Associates who have elected this benefit. The following pages explain how Solutions InSTORE works.

**Step 1 – Open Door**

The Company's open door policy encourages Associates to try to resolve any problems at work with their immediate supervisors, or if the Associate is unsatisfied with the immediate supervisor's response **or** needs to talk to someone other than the supervisor, the Associate may take the problem to the next higher level of supervision. Open Door also provides that the Associate may contact the Human Resources department for advice or assistance at any time.

**Step 2 – Review by the Office of Senior Human Resources Management**

If the Associate is not satisfied with the result of Open Door (Step 1), the Associate may file a written request for review with the Office of Senior Human Resources Management within thirty (30) days of the Step 1 decision. The complaint is referred to an appropriate HR executive, one who was not involved at Step 1, who will conduct an impartial investigation. A written decision is then issued within forty-five (45) days of receiving the complaint along with instructions for pursuing Step 3 if the Associate is not satisfied with the results of Step 2.

## Step 3 – Request for Reconsideration

For claims involving legally protected rights, if the Associate is not satisfied with the results of Step 2, the Associate may contact the Solutions InSTORE Program Manager within thirty (30) days of the Step 2 decision to file a written Request for Reconsideration, which provides the Associate with two options:

### Option 1 – Peer Review

Peer Review is available if the Associate's claim involves a final warning or termination and does not involve issues claiming harassment, discrimination, a reduction in force, layoff, or alleged statutory violations. If the Associate chooses Peer Review, the Solutions InSTORE Program Manager will provide the Associate with contact information for a division facilitator. The Associate has ten (10) days to contact the facilitator who will arrange for a panel proceeding. A volunteer panel will be assembled to review the Associate's complaint and render a decision. This panel consists of peers from the Associate's level, one (1) from the next level and one (1) non-voting facilitator to manage the process. Numbers of panelists may vary by division, region or location but will always consist of at least three (3) voting members. The panel will be assembled to review the Associate's complaint and a response will be given within five (5) days of the conclusion of the panel proceedings.

### Option 2 – Review by the Office of Solutions InSTORE

If the Associate chooses review by the Office of Solutions InSTORE, confirmation of the complaint received by the Office of Solutions InSTORE Program Manager will be sent to the Associate. The Solutions InSTORE Program Manager will then conduct an investigation and provide the Associate with a decision in writing within forty-five (45) days of receiving the complaint. Included in the decision are procedures for continuing on to Step 4.

## Step 4 – Arbitration Rules and Procedures

### Article 1 – Individuals Covered

All newly hired Associates and existing Associates (other than those who are covered by the terms of a collective bargaining agreement) who have voluntarily elected the benefits of arbitration by not returning an "Arbitration Election Form" within the prescribed time limits, removing them from coverage.

*For Associates who work in Alabama, Louisiana, Minnesota and New Jersey, an "Arbitration Election Form" must be submitted indicating the Associate's election to either receive the benefits of arbitration or to exclude them from coverage due to state law requirements.*

Any Associate who experiences a break in service with the Company of sixty (60) days or less, or who transfers from one subsidiary, division or affiliated Federated Company to another, will be automatically reinstated with the Associate's original election to be covered or removed from coverage. If the Associate becomes re-employed with the Company following a break in service greater than sixty (60) days, the Associate will be treated as a new hire and will be eligible to receive a new Arbitration Election Form.

### Article 2 – Claims Subject to or Excluded from Arbitration

Except as otherwise limited, all employment-related legal disputes, controversies or claims arising out of, or relating to, employment or cessation of employment shall be settled exclusively by final and binding arbitration administered by the American Arbitration Association ("AAA") under these Solutions InSTORE Early Dispute Resolution Rules and Procedures and the AAA's National Rules for the Resolution of Employment Disputes before a neutral, third-party Arbitrator selected in accordance with these Solutions InSTORE Early Dispute Resolution Rules and

4

5

Procedures. If there are any differences between the Solutions InSTORE Early Dispute Resolution Rules and Procedures and the AAA National Rules for the Resolution of Employment Disputes, the Solutions InSTORE Early Dispute Resolution Rules and Procedures shall apply.

Arbitration shall apply to any and all such disputes, controversies or claims whether asserted by the Associate against the Company and/or against any employee, officer, director or alleged agent of the Company. Arbitration shall also apply to any and all such civil disputes, controversies or claims asserted by the Company against the Associate.

All unasserted employment-related claims as of January 1, 2004 arising under federal, state or local statutory or common law shall be subject to arbitration. Merely by way of example, these claims include, but are not limited to, claims arising under the Age Discrimination in Employment Act (ADEA), Title VII of the Civil Rights Act of 1964, as amended, including the amendments of the Civil Rights Act of 1991, the Americans with Disabilities Act (ADA), the Family and Medical Leave Act (FMLA), the Fair Labor Standards Act (FLSA), 42 U.S.C. § 1981, as amended, including the amendments of the Civil Rights Act of 1991, the Employee Polygraph Protection Act, state discrimination statutes, state statutes, and/or common law regulating employment termination, misappropriation, breach of the duty of loyalty, the law of contract or the law of tort; including, but not limited to, claims for malicious prosecution, wrongful discharge, wrongful arrest/wrongful imprisonment, intentional/negligent infliction of emotional distress or defamation.

Claims by Associates that are required to be processed under a different procedure pursuant to the terms of an employee pension or benefit plan shall not be subject to arbitration. Claims by Associates for state employment insurance (e.g., unemployment compensation, workers' compensation, worker disability compensation) or under the National Labor Relations Act shall not be subject to

arbitration. Statutory or common law claims made outside of the state employment insurance system alleging that the Company retaliated or discriminated against an Associate for filing a state employment insurance claim, however, shall be subject to arbitration.

Nothing in these Solutions InSTORE Early Dispute Resolution Rules and Procedures prohibits an Associate from filing a charge or complaint with a government agency such as the EEOC, however, upon receipt of a right to sue letter or similar administrative determination, the Associate's claim becomes subject to arbitration as defined herein.

**Article 3 - Dismissal/Stay of Court Proceeding**

By agreeing to arbitration, the Associate and the Company agree to resolve through arbitration all claims described in or contemplated by Article 2 above. This means that neither the Associate nor the Company can file a civil lawsuit in court against the other party relating to such claims. If a party files a lawsuit in court to resolve claims subject to arbitration, both agree that the court shall dismiss the lawsuit and require the claim to be resolved through the Solutions InSTORE program.

If a party files a lawsuit in court involving claims that are, and other claims that are not, subject to arbitration, such party shall request the court to stay litigation of the nonarbitrable claims and require that arbitration take place with respect to those claims subject to arbitration. The Arbitrator's decision on the arbitrable claims, including any determinations as to disputed factual or legal issues, shall be entitled to full force and effect in any later court lawsuit on any nonarbitrable claims.

**Article 4 - Effective Date**

The Solutions InSTORE program is effective on January 1, 2004. Any unasserted employment-related dispute as described in Article 2 above, raised on or after the effective date must be arbitrated pursuant to these rules and procedures.

**Article 5 - Time Limit to Initiate Arbitration**

Arbitration must be initiated in accordance with the time limits contained in the applicable law's statute of limitations.

**Article 6 - Commencement of Arbitration**

To initiate arbitration, the Associate or Company must give written notice to the other party and/or person who is alleged to be liable in the dispute ("Claimant"). Notice to the Company must be given to the Office of Solutions InSTORE.

Notice to the Associate will be given by mailing such written notice to the Associate's last known home address.

The notice shall include a statement of the nature of the claim together with the documents in support of the claim, the relevant facts, the remedies including any amount of damages being sought, and the address which the Claimant will use for the purpose of the arbitration.

Within thirty (30) days after notice of a dispute is given, the other party shall give its response ("Respondent"). The response shall state all available defenses, relevant facts and any related counterclaims then known.

Within thirty (30) days after such counterclaims are given, the Claimant shall give Respondent a statement of the claimant's defenses to and relevant facts relating to the counterclaims.

Claims and counterclaims may be amended before selection of the arbitrator and thereafter with the arbitrator's consent. Notices of defenses or replies to amended claims or counterclaims shall be delivered to the other party within the thirty (30) days after the amendment.

8

**Article 7 - Selection of an Arbitrator**

Both the Company and the Associate shall participate equally in the selection of an Arbitrator to decide the arbitration. After receiving and/or filing an Arbitration Request Form, the Solutions InSTORE Program Manager shall ask the American Arbitration Association to provide the Company and the Associate a panel of seven (7) neutral arbitrators with experience deciding employment disputes.

The Company and the Associate then shall have the opportunity to review the background of the arbitrators by examining the materials provided by the American Arbitration Association. Within seven (7) calendar days after the panel composition is received, the Associate and the Company shall take turns striking unacceptable arbitrators from the panel until only one remains. The Associate and the Company will inform the American Arbitration Association of the remaining arbitrator who will decide the dispute. However, if both parties agree that the remaining arbitrator is unacceptable, a second panel will be requested from the American Arbitration Association and the selection process will begin again. If both parties agree no one on the second panel is acceptable, either party may request the American Arbitration Association to simply appoint an Arbitrator who was not on either panel.

**Article 8 - Time and Place of Arbitration**

The arbitration hearing shall be held at a location within fifty (50) miles of the Associate's last place of employment with the Company, unless the parties agree otherwise. The Parties and the Arbitrator shall make every effort to see that the arbitration is completed, and a decision rendered, as soon as possible. There shall be no extensions of time or delays of an arbitration hearing except in cases where both Parties consent to the extension or delay, or where the Arbitrator finds such a delay or extension necessary to resolve a discovery dispute or other matter relevant to the arbitration.

9

**Article 9 – Right to Representation**

Both the Associate and the Company shall have the right to be represented by an attorney. If the Associate elects not to be represented by an attorney during the arbitration proceedings, the Company will not have an attorney present during the arbitration proceedings.

**Article 10 - Discovery**

**a. Initial Disclosure**

Within fourteen (14) calendar days following the appointment of an Arbitrator, the Parties shall provide each other with copies of all documents (except for privileged documents that are protected from disclosure because they involve attorney-client, doctor-patient or other legally privileged or protected communications or materials) upon which they rely in support of their claims or defenses. Throughout the discovery phase, each party shall provide the other party with any and all such documents relevant to any claim or defense.

Upon written request, the Associate shall be entitled to a copy of all documents (except privileged documents as described above) in the Associate's "PERSONNEL FILE."

**b. Other Discovery**

**i. Interrogatories/Document Requests**

Each party may propound one (1) set of twenty (20) interrogatories (including subparts) to the other party. Interrogatories are written questions asked by one party to the other, who must answer under oath. Such interrogatories may include a request for all documents upon which the responding party relies in support of its answers to the interrogatories. Answers to interrogatories must be served within twenty-one (21) calendar days of receipt of the interrogatories.

10

**ii. Depositions**

A deposition is a statement under oath that is given by one party in response to specific questions from the other party, and usually recorded or transcribed by a court reporter. Each party shall be entitled to take the deposition of up to three (3) relevant individuals of the party's choosing. The party taking the deposition shall be responsible for all associated costs, such as the cost of a court reporter and the cost of a transcript.

**iii. Additional Discovery**

Upon the request of any party and a showing of substantial need, the Arbitrator may permit additional relevant discovery, but only if the Arbitrator finds that such additional discovery is not overly burdensome, and will not unduly delay the conclusion of the arbitration.

**c. Discovery Disputes**

The Arbitrator shall decide all disputes related to discovery. Such decisions shall be final and binding on the parties. In ruling on discovery disputes, the Arbitrator need not follow but may consult the discovery rules contained in the Federal Rules of Civil Procedure.

**d. Time for Completion of Discovery**

All discovery must be completed within ninety (90) calendar days after the selection of the Arbitrator, except for good cause shown as determined by the Arbitrator. In order to expedite the arbitration, the parties may initiate discovery prior to the appointment of the Arbitrator.

11

## Article 11 - Hearing Procedure

### a. Witnesses

Witnesses shall testify under oath, and the Arbitrator shall afford each party a sufficient opportunity to examine its own witnesses and cross-examine witnesses of the other party. Either party may issue subpoenas compelling the attendance of any other person necessary for the issuing party to prove its case.

### i. Subpoenas

A subpoena is a command to an individual to appear at a certain place and time and give testimony. A subpoena also may require that the individual bring documents when he or she gives testimony. The Arbitrator shall have the authority to enforce and/or cancel such subpoenas. Subpoenas must be issued no less than ten (10) calendar days prior to the commencement of an arbitration hearing or deposition.

The party issuing the subpoena shall be responsible for the fees and expenses associated with the issuance and enforcement of the subpoena, and with the attendance of the subpoenaed witness at the arbitration hearing.

### ii. Sequestration

The Arbitrator shall ensure that all witnesses who will testify at the arbitration are not influenced by the testimony of other witnesses. Accordingly, the Arbitrator shall sequester all witnesses who will testify at the arbitration, provided that the Arbitrator shall permit the Associate involved in the arbitration and the Company's designated representative to remain throughout the arbitration, even though they may or may not testify at the hearing.

12

### b. Evidence

The parties may offer evidence that is relevant and material to the dispute and shall produce any and all non-privileged evidence that the Arbitrator deems necessary to a determination of the dispute. The Arbitrator need not specifically follow the Federal Rules of Evidence, although they may be consulted to resolve questions regarding the admissibility of particular matters.

### c. Burden of Proof

The party requesting arbitration or the party filing a counterclaim has the burden of proving a claim or claims by a preponderance of the evidence. To prevail, the party bringing the arbitration must prove that the other's conduct was a violation of applicable law.

### d. Briefing

Each party shall have the opportunity to submit one (1) dispositive motion, one (1) pre-hearing brief, and one (1) post-hearing brief, which is a written statement of facts and law, in support of its position. Submission of such briefs is not required, however, briefs shall be typed and shall be limited in length to twenty (20) double-spaced pages.

### e. Transcription

The parties may arrange for transcription of the arbitration by a certified reporter. The party requesting transcription shall pay for the cost of transcription.

### f. Consolidation

#### i. Claims

The Arbitrator shall have the power to hear as many claims as a Claimant may have consistent with Article 2 of these Solutions InSTORE Early Dispute Resolution Rules and Procedures.

13

The Arbitrator may hear additional claims that were not mentioned in the Arbitration Request Form, provided the Claimant notifies the other party at least thirty (30) calendar days prior to a scheduled arbitration, the additional claims are timely as of the date on which they are added, and the other party is not prejudiced in its defense by such addition.

## ii. Parties

The Arbitrator shall not consolidate claims of different Associates into one (1) proceeding, nor shall the Arbitrator have the power to hear an arbitration as a class action (a class action involves representative members of a large group, who claim to share a common interest, seeking relief on behalf of the group).

## g. Confidentiality

All aspects of an arbitration pursuant to these Solutions InSTORE Early Dispute Resolution Rules and Procedures, including the hearing and recording of the proceeding, shall be confidential and shall not be open to the public, except: (i) to the extent both parties agree otherwise in writing; (ii) as may be appropriate in any subsequent proceeding between the parties; or (iii) as may otherwise be appropriate in response to a governmental agency, legal process, or as required by state law.

All settlement negotiations, mediations, and any results shall be confidential.

## Article 12 - Substantive Choice of Law

The Arbitrator shall apply the substantive law of the state in which the Associate is or was employed. For claims arising under federal law, the Arbitrator shall follow the substantive law as set forth by the United States Supreme Court. If there is no controlling United State Supreme Court authority, the Arbitrator shall follow the substantive law applicable to the

United States Circuit Court of Appeals and the United States District Court for the District in which the Associate is or was employed.

## Article 13 - Arbitrator Authority

The Arbitrator shall conduct the arbitration and shall have the authority to render a decision in accordance with these Solutions InSTORE Early Dispute Resolution Rules and Procedures, and in a manner designed to promote rapid and fair resolution of disputes.

### a. Jurisdiction

The Arbitrator's authority shall be limited to deciding the case submitted by the party bringing the arbitration. Therefore, no decision by any Arbitrator shall serve as precedent in other arbitrations. The Associate's employment remains alterable at the discretion of the Company and/or terminable at any time, at the will of either the Associate or the Company, with or without just cause. Accordingly, the Arbitrator shall have no authority to require that the Company have "just cause" to discipline or discharge an Associate or to change the terms and conditions of employment of an Associate unless specifically required by federal, state or local law, or as a remedy for a violation of applicable law by the Company with respect to the Associate.

### b. Sanctions

The Arbitrator shall have the power to award sanctions against a party for such party's failure to comply with these Solutions InSTORE Early Dispute Resolution Rules and Procedures or with an order of the Arbitrator. These sanctions may include assessment of costs, prohibitions of evidence, or, if justified by a party's wanton or willful disregard of these Solutions InSTORE Early Dispute Resolution Rules and Procedures, an adverse ruling in the arbitration against the party who has failed to comply.

14

15

**Article 14 - Award**

Within thirty (30) calendar days after the later of the close of the hearing or the receipt of post-hearing briefs, if any, the Arbitrator shall mail to the parties a written decision specifying appropriate remedies, if any. In the Arbitrator's discretion, the award may include findings of fact and conclusions of law. The parties to an arbitration shall be provided with a copy of the Arbitrator's award.

**Article 15 - Fees and Expenses**

**a.  Costs Other Than Attorney Fees**

**i.  Definitions**

Costs of an arbitration include the daily or hourly fees and expenses (including travel) of the Arbitrator who decides the case, filing or administrative fees charged by the AAA, the cost of a reporter who transcribes the proceeding, and expenses of renting a room in which the arbitration is held. Incidental costs include such items as photocopying or the costs of producing witnesses or proof.

**ii.  Filing Fee/Costs of Arbitration**

An Associate initiating arbitration shall pay the cost of arbitration up to a maximum of the least of one (1) day's base pay or One Hundred Twenty-Five Dollars ($125), whichever is less. Upon filing the request for arbitration, the Associate shall remit such fee. The Company shall pay the remainder of the costs of the arbitration. The Company shall pay the entire filing fee should it initiate arbitration. Each party shall pay its own incidental costs.

16

**iii.  Reimbursement for Legal Fees or Costs**

The program does not infringe on either party's right to consult with an attorney at any time. In fact, the Company will reimburse an Associate for this legal consultation and/or representation during Step 4 of the program, at a maximum benefit of Two Thousand Five Hundred Dollars ($2,500) per Associate in a rolling twelve (12) month period. If the Associate is not represented by counsel, the Company will reimburse an Associate for incidental costs up to a maximum of Five Hundred Dollars ($500) per Associate in a rolling twelve (12) month period. The Associate will not be entitled to reimbursement if the Arbitrator determines the arbitration claim was frivolously filed. Any reimbursement to the Associate will occur following the conclusion of the proceedings upon submission of the Associate's bills for costs of legal services or incidental costs.

**b.  Shifting of Costs**

If the Associate prevails in arbitration, whether or not monetary damages or remedies are awarded, the filing fee shall be refunded to the Associate, and the Arbitrator may (based on the facts and circumstances) require that the Company pay the Associate's share of the costs of arbitration and incidental costs.

**Article 16 - Remedies and Damages**

Upon a finding that a party has sustained their burden of persuasion, the Arbitrator shall have the same power and authority as would a judge to grant any relief, including costs and attorney's fees, that a court could grant, in conformance with applicable principles of common, decisional and statutory law in the relevant jurisdiction.

17

**Article 17 - Settlement**

The parties may settle their dispute at any time without involvement of the Arbitrator.

**Article 18 - Enforceability**

The arbitration and any award rendered pursuant to it shall be enforceable and subject to the Federal Arbitration Act, 9 U.S.C. § 1, et seq. regardless of the state in which the arbitration is held or the substantive law applied in the arbitration.

**Article 19 - Appeal Rights**

The decision rendered by the Arbitrator shall be final and binding as to both the Associate and the Company. Either party may appeal the Arbitrator's decision to a court in accordance with the appeal procedures of the Federal Arbitration Act, 9 U.S.C. § 1, et seq.

**Article 20 - Severability/Conflict with Law**

In the event that any of these Solutions InSTORE Early Dispute Resolution Rules and Procedures are held to be unlawful or unenforceable, the conflicting rule or procedure shall be modified automatically to comply with applicable law.

In the event of an automatic modification with respect to a particular rule or procedure, the remainder of these rules and procedures shall not be affected. An automatic modification of one of these rules or procedures shall apply only in the jurisdiction in which it is in conflict with applicable law. In all other jurisdictions, these Solutions InSTORE Early Dispute Resolution Rules and Procedures shall apply in full force and effect.

**Article 21 – Cancellation or Modification of Dispute Resolution Rules and Procedures or Program**

The Company may alter these Solutions InSTORE Early Dispute Resolution Rules and Procedures or cancel the program in its entirety upon giving thirty (30) days written notice to Associates, provided that all claims arising before modification or cancellation shall be subject to these Solutions InSTORE Early Dispute Resolution Rules and Procedures in effect at the time the Arbitration Request Form and accompanying filing fee are received by the Company.

**Article 22 – Change in Control of Federated**

A change in control of the Company shall nullify and cancel the Associate's election to be covered by Step 4 – Arbitration. A change in control will be deemed to have occurred if:

i. Federated is merged, consolidated, or reorganized into or with another corporation or other legal entity unaffiliated with Federated, resulting in less than a majority of the combined voting power of the then-outstanding securities of the surviving or resulting corporation or entity immediately after such transaction being held in the aggregate by the holders of the then-outstanding securities entitled to vote generally in the election of directors of Federated (the "Voting Stock") immediately prior to such transaction; or

ii. Federated sells or otherwise transfers substantially all of its assets to another corporation or other legal entity and, as a result of such sale or transfer, less than a majority of the combined voting power of the then-outstanding securities of such other corporation or entity immediately after such sale or transfer is held in the aggregate by the holders of Voting Stock of Federated immediately prior to such sale or transfer.

**Article 23 – Sale of A Subsidiary or Operating Unit**

Should Federated sell a subsidiary or operating unit of a subsidiary (through the sale of stock or substantially all of its assets) and such transaction includes transferring employees to another third-party, a transferring Associate's agreement to arbitration shall remain in effect as to any employment-related claims arising prior to such sale but as such agreement shall apply in those circumstances only to a claim against Federated and shall be null and void as to such third-party entity.





# Early Dispute Resolution

## FEDERATED DEPARTMENT STORES



**Exhibit B**

# positive work place

A t Federated, we believe in building strong work relationships. These relationships allow us to learn from each other, give us a sense of community and greatly contribute to our job satisfaction. But just like at home, we need to take care of our relationships. That means when we have disagreements at work, we give them our immediate attention. Left unresolved, these conflicts can damage relationships, distract us from doing our jobs and occasionally even lead to costly and upsetting litigation. That's why we are proud to share with you our Early Dispute Resolution (EDR) program. This program, called Solutions InSTORE, is a four-step process that improves the way we now solve workplace disputes. It provides additional steps, as needed, to encourage problem solving at the earliest possible level.



Solutions InSTORE

COMMON GROUND

L'AROMATIQUE

2

**PROGRAM STEPS:**



OFFICE OF
SOLUTIONS
InSTORE

PEER
PANEL

**KEY POINTS:**

**1:** *Steps 1 and 2 are available for all kinds of workplace disputes, big or small – see page 6 for examples).*

**2:** *You drive the process – the Company is bound by the decision at every step, but you decide whether you are satisfied or would like to proceed to the next step.*

**3:** *Only the more serious kinds of disputes (that would otherwise be considered in a court of law), such as wrongful termination can be advanced to Steps 3 or 4.*

**4:** *If you take your dispute all the way to Step 4, you and the Company are bound by the decision of the independent arbitrator.*

**5:** *Respect for your privacy and confidentiality are key features of this program. With Solutions InSTORE, you can be certain that the issue will remain confidential. Only those with a business need to know will be involved.*

**STEP 1: Open Door —**
an informal way to discuss your problem with your supervisor or any other member of your local management team (e.g., Store or Facility Manager, HR Representative).

**STEP 2: Office of Your Divisional Senior Human Resources Management**
— a written complaint sent to your division's most senior Human Resources office where it is reviewed by an HR professional who was not previously involved in the Open Door decision.

**STEP 3: Request for Reconsideration —**
a formal review of eligible claims using one of the following two options (both are impartial and independent of your division management):

• **Peer Panel:** A panel of people in similar positions to you ("peers") within your division, or

• **Office of Solutions InSTORE:**
An executive who works with the Solutions InSTORE program, located in Cincinnati, Ohio.

**STEP 4: Arbitration —**
A formal review of your complaint, similar to a court proceeding, but decided by an independent "arbitrator" who is an employee of the American Arbitration Association (AAA), not the Company.

# for the benefit of all



With Solutions InSTORE, we want a program that will reinforce the value of each Associate as well as the importance of really listening to each other and understanding our different points of view. As always, we want to provide the very Best Work Environment. We talked to many leading companies that have introduced successful ways to resolve workplace disputes. We learned that there are many time-tested programs out there and each one is a little different. Finally, we studied our own employee population and designed the steps that we thought would work best for our diverse workforce.



For a company of our size, we are fortunate to have very few employment-related lawsuits. However, in those rare instances when one does occur, it is almost always disruptive, time-consuming and costly for everyone involved. We would much rather see our Company's resources used more productively on programs that benefit all our Associates.



### HERE'S WHY THIS SPECIAL PROGRAM WILL BENEFIT YOU, OUR COMPANY AND OUR CUSTOMERS:

**IT'S FAIR.**
Solutions InSTORE offers you multiple opportunities to have your dispute heard by a third party – some are close to your situation and others are more removed. You decide whether to accept the outcome of each step or move to the next one – as long as it's appropriate for your type of dispute.

**IT PRESERVES WORK RELATIONSHIPS.**
By creating a way for everyone to work out differences respectfully, Solutions InSTORE lets you build solid relationships and grow in your job.

**IT RETAINS YOU AS AN EMPLOYEE.**
Hopefully, if you have good work relationships with your manager and cowork-ers and the opportunity to learn new skills, you will continue to stay happily employed in our Company.



RELATIONSHIPS

**IT'S QUICK.**
There are timing guidelines at each step so disputes cannot drag on. You will always get answers to your questions, and the process is designed to move your dispute along quickly.

**IT'S INEXPENSIVE FOR YOU AND THE COMPANY.**
Even if your dispute ends up in arbitration, you pay only a small percentage of the arbitration costs. And, if the arbitrator rules in your favor, the Company pays 100% of all arbitration costs. There is even legal financial assistance available to you from the Company. For both you and the Company, Solutions InSTORE is much less costly than arguing a case in court.

**IT'S CONFIDENTIAL.**
Everyone involved in Solutions InSTORE is committed to keeping all disputes confidential. This means we involve only those with a business need to know.

**IT'S FREE OF RETALIATION.**
Retaliation, in any form, is something the Company will not tolerate. You can count on it!

## STEP ONE:

# open door

O pen Door is the starting point for most disputes. In the majority of cases, it will also be the ending point – where your concerns are discussed and resolved to your satisfaction.

Under the Open Door policy, you are encouraged to discuss your situation with your supervisor since he or she usually knows you the best and can most likely resolve your concern. If you feel more comfortable, you can also discuss your concern with another member of local management (for example, another member of your management team like your Store or Facility Manager or your Human Resources Representative).

Open Door is usually successful because we are problem-solving at a very early stage and you have access to supervisors and managers who know you and understand your issues.

If this process does not work for you, for whatever reason, you may proceed to Step 2 by submitting a written request to the office of your Senior Human Resources Management in your division's corporate office.

### HOW STEP 1 WORKS:



| You bring your dispute to your supervisor or to a member of your local Human Resources or management team | Supervisor/Human Resources management responds verbally back to you in a reasonable time frame | If you are not satisfied with the response, you can go to Step 2 |

## STEP TWO:

6

**KEY POINTS:**

*What's Covered Under Steps 1 & 2 of Solutions InSTORE*

*All kinds of issues – big or small – including:*

- *Disputes about vacation time or absences from work*
- *Pay disputes and performance issues*
- *Personality conflicts that affect job performance*
- *Perceived discrimination or sexual harassment*
- *Warnings and termination*

human resources

S tep 2 still takes place within your division but it is more formal than Open Door. In this step, your dispute is referred to your division's most Senior Human Resources professionals for a thorough review.

### HOW STEP 2 WORKS:

| COMPLAINT REFERRED TO APPROPRIATE HR EXECUTIVE |
| MAKE A WRITTEN COMPLAINT TO DIVISION'S SENIOR HR MANAGEMENT | HR EXECUTIVE COMPLETES INVESTIGATION AND PREPARES A RESPONSE | IF NOT SATISFIED, GO TO STEP 3 |

You make a written complaint to your division's Senior Human Resources Management within 30 days of the Open Door decision

Your complaint is referred to an appropriate Human Resources executive who is not involved in your Step 1 decision

A Human Resources executive completes the investigation and prepares a response to you

If you are not satisfied, you can proceed to Step 3 as long as your dispute could be considered in a court of law, for example, in cases of perceived discrimination or harassment

## STEP THREE:

# request for reconsideration

**KEY POINTS:**

*Employees who volunteer and meet the criteria to become a member of the peer panelist team for their location or region, receive specialized training when they are randomly elected to serve on a panel. This training gives panelists confidence in their role and prepares them with the skills needed to make the most appropriate decision when determining a response to a claim.*

If you're not satisfied with the results of Step 2 and your claim could otherwise be considered in a court of law, you may proceed to Step 3 — Request for Reconsideration. In this step, you have two very different options to choose from. Call the Solutions InSTORE office to make arrangements for your request to be handled by the most appropriate process, either:

| Review by a Peer Panel | OR | Review by the Office of Solutions InSTORE |

### Review by a Peer Panel

The Peer Review process gives you a chance to take your case to a panel of people just like you. Because peer panelists are generally from your location or region and have similar jobs, they are uniquely qualified to understand your dispute. The panel usually includes three volunteer panelists (two at your level and one at the next higher level) and one facilitator who helps direct the process, but does not vote on the outcome of the claim. The Company is so confident that these Associates will look at your situation with care and use good judgment that it is willing to abide by the panel's decision.

The Peer Panel process is available for most disputes related to final written warnings or terminations. Exceptions would include claims related to layoffs, harassment, and discrimination – claims that would truly benefit from a review by a trained professional. Step 3 claims like these will be directed for review by an executive of the Office of Solutions InSTORE.

**HOW STEP 3 WORKS:**





| CONTACT SOLUTIONS INSTORE OFFICE | SELECT EITHER PEER REVIEW OR REVIEW BY THE OFFICE OF SOLUTIONS INSTORE | REVIEW IS CONDUCTED | |

You contact the Solutions InSTORE office

With the help of the Solutions InSTORE office, determine which Step 3 option, Peer Review or Review by the Office of Solutions InSTORE is appropriate for your claim

The review is conducted either by a Peer Panel or by the Office of Solutions InSTORE

While the Company is bound by the decision, if you are not satisfied with the results of this process, you can proceed to Step 4



**KEY POINTS:**

**1:** *Any type of dispute that could be heard in a court of law, including if you feel you were overlooked for a promotion or discriminated against because of race or age; or if you believe you've been the subject of sexual harassment, or terminated improperly is appropriate for Steps 3 and 4.*

**2:** *The staff of the Office of Solutions InSTORE, which is located in Cincinnati, Ohio) is available to assist you should your claim proceed to Steps 3 and 4 of the Solutions InSTORE program. When calling, you can speak confidentially to a professional who can answer questions or provide information about the program and how it works.*

### Review by Office of Solutions InSTORE

If at Step 3 you prefer your claim to be heard by an employee relations professional, or if it falls outside of what can be reviewed by a Peer Panel, you may take it to the Federated Corporate Office of Solutions InSTORE. The program director of Solutions InSTORE is responsible for conducting a thorough investigation, gathering information from you and possibly other witnesses involved in your situation. You will receive a decision in writing within a reasonable time frame from the day your complaint is received, generally within 45 days. If you are not satisfied with the decision, you may proceed to Step 4.

### More about the Office of Solutions InSTORE

When deciding to file a claim at Step 3, you will speak to a member of the Office of Solutions InSTORE who will help you decide which Step 3 option(s) applies to your claim. Once you determine between the Peer Panel or Review by the Office of Solutions InSTORE, a member of the Solutions InSTORE staff will guide you through the process to ensure your claim receives the proper review.

If you receive a decision for your Step 3 claim that you are still not satisfied with, the Solutions InSTORE staff will also help guide you through Step 4 – Arbitration.

For assistance with a Step 3 claim, you can contact the Office of Solutions InSTORE by calling 1-866-285-6689.

 STEP FOUR:

## KEY POINTS:

*The American Arbitration Association (AAA) is a public service, nonprofit organization that offers a wide range of dispute resolution services to private individuals, businesses, associations and all levels of government. AAA is the largest provider of early dispute resolution services in the United States.*

# arbitration

**I** f you are not satisfied with the results of Step 3, you may proceed to Step 4 — Arbitration, a process outside of and independent from the Company. This is the last step in the Solutions InSTORE program.

Arbitration is a lot like a court proceeding, but it's less formal, less time-consuming and less expensive. Even so, many of the same processes will take place — including presenting evidence and hearing witnesses. What's different is that an arbitrator from the American Arbitration Association (who is like a judge), makes the final decision rather than a jury.

## HOW ARBITRATION WORKS:



| MAKE A WRITTEN REQUEST FOR ARBITRATION | YOU AND COMPANY AGREE ON AN ARBITRATOR | ARBITRATION SESSION HELD | DECISION IS FINAL FOR EVERYONE |
|---|---|---|---|
| You make a written request for arbitration to the Office of Solutions InSTORE within 30 days of Step 3 decision | You and the Company agree on an arbitrator | Arbitration session is usually held within 90 days of arbitrator selection | The arbitrator's decision is final and binding for everyone |

**Monetary awards** – The arbitrator can award the same damages available in a court of law – and if the decision is in your favor, **you** receive the benefits, not just your lawyer. In court cases, the legal fees have become so large that in the end, it's the lawyers who benefit the most from any monetary awards.

**Legal counsel** – You may wish to have an attorney present at arbitration. The Solutions InSTORE program will reimburse you for up to $2,500 in a rolling calendar year for attorney costs related to arbitration. You can use this money to consult an attorney to see if you should bring your claim to arbitration or for the actual cost of having one present at the proceeding. If you don't bring an attorney to arbitration, the Company won't either. In this case, Solutions InSTORE will pay up to $500 of the expenses you may incur in preparing and presenting your claim.

**Arbitration costs** – Arbitration costs are separate from attorney costs. You'll pay a portion of the arbitration costs (filing fee) up to a maximum of $125. And, if the arbitrator rules in your favor, the Company will reimburse you for your portion of the filing fee.

Taking your claim to arbitration is like taking your claim to a court of law. The same remedies are available to you as in a court of law, however, when you agree to arbitrate instead of taking your claim to court, Solutions InSTORE has several other advantages and benefits for you.

| | STEP 4: arbitration | court of law |
|---|---|---|
| WHO HEARS MY CLAIM? | An independent arbitrator from outside the Company, specially trained to hear employment related disputes. For example, retired judges may serve in this role. | A judge who may not specialize in employment law or jury who is completely unfamiliar with and has no specific training in employment law. |
| HOW QUICKLY CAN MY DISPUTE BE RESOLVED? | Most arbitration processes take less than 90 days to complete. That means you will be able to have a final resolution much faster. | In a court of law, your claim will take much longer to resolve. The average today is 2-5 years. |
| WHAT IS THE COST TO FILE A CLAIM? | A percent of your pay, however, in no case will you pay more than $125. | The current fee to file your claim in a Federal District Court is $150, and if further appeals are required additional fees apply. |
| DO I GET ANY KIND OF LEGAL FINANCIAL BENEFIT? | You can receive up to $2,500 per rolling calendar year. | None |
| AM I REQUIRED TO HAVE AN ATTORNEY? | No, but you can if you want. It is your choice. The tone of an Arbitration proceeding is much less formal than a court of law, even though it can have the same results. Many employees choose to represent themselves. And if you choose not to bring an attorney, the Company won't either. | While you can represent yourself in a court of law, the legal system is much more formal and complex, often requiring you to pay for legal representation to manage through the system. |

## STEP FOUR: the decision is yours

**IF YOU WORK IN THE STATE OF NEW JERSEY, ALABAMA, LOUISIANA, OR MINNESOTA:**

*You are required to return the enclosed form indicating your election. Please respond within 30 days from your hire date.*

**Your Solutions InSTORE enrollment period** will be your opportunity to decide whether you want to receive the benefits of all four steps of this program during your career with the Company. When electing to be covered by the benefits of final and binding arbitration, you and the Company agree to use arbitration as the sole and exclusive means to resolving any dispute regarding your employment; we both waive the right to civil action and a jury trial. If you decide you would like to be excluded from participating in and receiving the benefits of Step 4, we will ask you to tell us in writing by completing the form enclosed in this brochure and returning it to the Office of Solutions InSTORE at the address provided **within 30 days of your hire date**. In this case, Steps 1-3 will continue to apply to you – you won't however, be eligible for the benefits available under the Step 4: Arbitration process.

At Federated, we have a special community – and anytime you have a problem at work, it matters. You deserve respect, attention and a clear, unbiased process to help resolve your problems – quickly and fairly. That's Solutions InSTORE.

**More specific details are in the program's Plan Document which governs Plan administration.** A copy of the Plan Document can be obtained by logging onto www.employeeconnection.net, requested through your local human resources representative, by sending an email to solutions.instore@fds.com or by calling the Office of Solutions InSTORE at 1-866-285-6689.

Exhibit B - 000011

# facts about arbitration

- There has been an evolution of companies moving to programs which include arbitration.
- Court dockets are extremely crowded. The vast majority of lawsuits never get to trial.
- Arbitration is faster, cheaper and more satisfying for parties than traditional litigation:

| | arbitration | vs. | litigation |
|---|---|---|---|
| **AVERAGE LENGTH OF TIME** | 80-100 days | vs. | 2-5 years |
| **COMPANY COST** | $3,000 - $15,000 [1] | vs. | $50,000 |
| **EMPLOYEE COST** | Filing fee up to one day's pay capped at $125, which is refunded if employee wins. Employee eligible for $2,500 from the Company to help offset attorney costs, if one is used. | vs. | A minimum filing fee of $150 (Federal Court). No legal financial assistance benefit to help offset attorney fees. |
| **EMPLOYEE WINS** | >50% of time [2] | vs. | 15% of the time |
| **EMPLOYEES WIN** | 18% of requested remedy [3] | vs. | 10.5 % of requested remedy [4] |
| **CLASS ACTIONS** | No | vs. | Yes |

- The American Arbitration Association (AAA) is a not-for-profit agency Federated chose to oversee the arbitration step of Solutions InSTORE. AAA is the largest provider of arbitration services in the world with more than 75 years of experience and over 2 million disputes administered.
- The arbitration process developed by AAA has been endorsed by the following organizations: American Civil Liberties Union, Federal Mediation and Conciliation Service, National Academy of Arbitrators, and National Society of Professionals in Dispute Resolution.
- Federated's EDR program, Solutions InSTORE, exceeds the AAA's due process protocol.

[1] Lewis L. Maltby, Private Justice: Employment Arbitration and Civil Rights, 30 Columbia Human Rights Law Review 29 (1998)
[2] id.
[3] id.
[4] This figure includes cases that were thrown out of court when the employees received no award.

2003



*This booklet is a summary of the provisions and benefits of the Solutions InSTORE program. For a copy of the Plan Document see page 10.*

*Associates covered under a collective bargaining agreement are not automatically eligible to participate in the Solutions InSTORE program.*



**EARLY DISPUTE RESOLUTION PROGRAM**
**ELECTION FORM**

**Federated**
DEPARTMENT STORES, INC.

## URN THIS FORM ONLY IF DECLINING THE BENEFITS OF ARBITRATION.

ederated is pleased to offer our employees the full benefits of Solutions InSTORE, our early dispute resolution program. Solutions InSTORE offers many ways to resolve almost any type of workplace dispute, large or small. Because it emphasizes early resolution, this program will help us preserve our work relationships so that you can enjoy the kind of work environment that supports success.

f you have not yet done so, please review the entire Solutions InSTORE program brochure that accompanied this orm. It describes the benefits of the program and the action you must take regarding Step 4 of the program. You may also obtain a copy of the program's Plan Document by logging on to www.employeeconnection.net, by equesting it through your local Human Resources Representative, by sending an email to solutions.instore@fds.com or by calling the Office of Solutions InSTORE at 1-866-285-6689. While Steps 1-3 will be available and apply to everyone, this form serves as an election form if you choose not to be covered by the benefits of Arbitration. Please read all information, including this form, carefully.

Complete and return this form ONLY IF YOU **DO NOT** WANT TO BE COVERED BY THE BENEFITS OF ARBITRATION during your career with the company. *In this case, your completed form must be returned to the Office of Solutions InSTORE and postmarked no later than 30 days from your hire date.* Si le gustaria tener este formulario en español, favor de llamar el numero 1-866-285-6689.

P   se CLEARLY print all requested information.

Full Name _____    Social Security Number _____

Address _____    Home Phone Number _(___)_____

City _____ State _____ Zip _____    Employee ID Number _____

Division Name _____    Store/Work Location Name _____

> **[  ] I Decline The Benefits of Arbitration**
> I have read all the information about Solutions InSTORE and I elect
> NOT to be covered by the benefits of Arbitration.

**AUTHORIZATION** *I have read and understand the program information, and voluntarily agree that I am waiving the ability to participate in Step 4 of the Solutions InSTORE program. Please keep a copy of this form.*

I _____ on _____ understand that my election as of this date will be binding for the
    *(Associate Signature)*            *(Date)*
duration of my employment with Federated Department Stores, Inc. and its subsidiaries.

If declining the benefits of Arbitration, Step 4 of Solutions InSTORE, return your form to:

**Solutions InSTORE**
**P.O. Box 3083**
**Mason, OH  45040-9853**

Exhibit B - 000013

8 03