Westlaw.

Not Reported in F.Supp.2d                                                                                                    Page 1
Not Reported in F.Supp.2d, 2005 WL 1950404 (N.D.Ill.), 35 Employee Benefits Cas. 2858
(Cite as: Not Reported in F.Supp.2d, 2005 WL 1950404 (N.D.Ill.))

C
Maroney v. Triple "R" Steel, Inc.
N.D.Ill.,2005.

United States District Court,N.D. Illinois, Eastern Division.
John MARONEY, Plaintiff,
v.
TRIPLE "R" STEEL, INC. and Roger Olsen, Defendants.
No. 05 C 1249.

Aug. 11, 2005.

Robert B. Greenberg, Asher, Gittler, Greenfield, Cohen & D'Alba, Chicago, IL, for Plaintiff.
Mark Eugene Gryska, Craig Charles Westfall, Michael T. Nigro, Nigro & Westfall, P.C., Glendale Heights, IL, Francis A. Spina, Jennifer L. Colvin, Paul P. Pobereyko, Cremer, Kopon, Shaughnessy & Spina, Chicago, IL, for Defendants.

*MEMORANDUM OPINION AND ORDER*

LEINENWEBER, J.

*1 Plaintiff John Maroney (hereinafter, "Plaintiff") filed a three-count complaint against Triple "R" Steel, Inc. and its president, Roger Olsen (collectively, "Triple R"). The complaint alleges violations of the Employment Retirement Income Security Act ("ERISA"), retaliatory discharge, conversion, and breach of contract. Defendants have filed a Motion to Dismiss the Complaint. For the reasons set forth below, Defendants' Motion is granted.

I. *BACKGROUND*

Plaintiff alleges the following facts in his complaint. On January 4, 1997, Plaintiff entered into an employment agreement with Triple R (the "Agreement") to become Vice President of the corporation. The Agreement included an arbitration clause stating that "[a]ny differences, claims, or matters in dispute arising between [Triple R] and [Maroney] out of or connected with this Agreement shall be submitted to arbitration."(Compl.Exh. 1). It also provided that Triple R "shall obtain and pay the premiums on medical expense insurance covering [Maroney], his spouse, and dependent children."(*Id.*) Triple R obtained a Blue Cross Blue Shield medical insurance plan (the "Plan") for Plaintiff.

Soon after, Plaintiff received documentation regarding the specifics of the Plan. To be eligible for insurance under the Plan, Maroney had to be a full-time employee of Triple R-working a minimum of 30 hours per week and on the permanent payroll. The Plan also included a section on the continuation of coverage pursuant to ERISA and the Consolidated Omnibus Budget Reconciliation Act ("COBRA").*See generally*29 U.S.C. § 1161(a). This section allowed Plan members who became ineligible to elect to continue their healthcare coverage.

On June 2, 2004, Plaintiff sustained injuries while at work. He then filed a worker's compensation claim with the Illinois Industrial Commission. On or about July 29, 2004, Triple R terminated Maroney, which made him ineligible for health insurance under the Plan. However, Triple R did not inform him of his COBRA rights under 29 U.S.C. § 1166. Even without this required notice, Plaintiff sent Triple R a letter on August 3, 2004 electing to continue coverage under COBRA and he included a check for the initial premium amount. Triple R endorsed Plaintiff's check and sent it to Blue Cross Blue Shield. Thereafter, Blue Cross Blue Shield returned the check indicating that they would only accept payment from Triple R and not from the terminated employee. On two subsequent occasions, Plaintiff personally delivered premium checks to Triple R. However, Triple R did not properly submit Plaintiff's checks or their own to Blue Cross Blue Shield. Maroney eventually lost his insurance coverage for failing to submit premium payments.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT 1**

Case 1:07-cv-07163   Document 15-4   Filed 07/29/2008   Page 2 of 4

Not Reported in F.Supp.2d                                                                                          Page 2
Not Reported in F.Supp.2d, 2005 WL 1950404 (N.D.Ill.), 35 Employee Benefits Cas. 2858
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 1950404 (N.D.Ill.))**

On March 2, 2005, Plaintiff filed a three-count complaint against Triple R alleging: (1) violations of ERISA and COBRA, specifically regarding the continuation coverage provisions under 29 U.S.C. §§ 1161, 1166 (the "ERISA claim"); (2) retaliatory discharge; and (3) conversion and breach of contract for failure to submit premium payments, pay insurance premiums, and pay vacation time.

*2 Concerning the ERISA claim, Triple R asserts that it is exempt from COBRA and that the court lacks jurisdiction because the claim is subject to arbitration. Triple R also contends that the remaining claims must be arbitrated, or, in the alternative, should be remanded to a state court if the Court dismisses the ERISA claim.

Plaintiff responds that (1) ERISA estoppel prevents Triple R from claiming a COBRA exemption; (2) the arbitration clause does not cover his claims because it is overly vague and broad; and (3) the ERISA claim is not subject to the arbitration clause because the dispute arose post-termination.

II. *DISCUSSION*

The Federal Arbitration Act (the "FAA") provides that an arbitration clause "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."9 U.S.C. § 2. Further, the party opposing arbitration must demonstrate that the clause is unenforceable. *See, Shearson/Am. Express v. McMahon,* 482 U.S. 220, 227, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987).

To find a claim arbitrable, a court "must determine: (1) whether there is an agreement to arbitrate; (2) whether the claims fall within the scope of that agreement, and (3) whether there has been a waiver" of the right to arbitrate. *Bauer v. Morton's of Chi.,* No. 99 C 5996, 2000 WL 149297, at *2 (N.D.Ill. Feb. 9, 2000) (citing *Gilmer v. Interstate/ Johnson Lane Corp.,* 500 U.S. 20, 24-34, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)). Further, "[w]hen deciding whether the parties agreed to arbitrate a certain matter, courts generally should apply ordinary state-law principles that govern the formation of contracts."*First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). However, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself [should be] resolved in favor of arbitration."*Volt Info. Scis., Inc. v. Bd. of Trs.,* 489 U.S. 468, 476, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). Illinois law governs the applicability of Maroney's arbitration clause.

A. Applicability of the Agreement's Arbitration Clause to Statutory Causes of Action

Illinois favors enforcing arbitration clauses, but requires a person knowingly and voluntarily to agree to arbitrate their statutory causes of action. *See, Melena v. Anheuser-Busch, Inc.,* 352 Ill.App.3d 699, 287 Ill.Dec. 859, 816 N.E.2d 826, 829, 832 (Ill.App.Ct.2004) (affirming the denial of a motion to compel arbitration). The requirement balances the strong presumption in favor of arbitration with a policy of fairness in particular factual situations where the employee is at a distinct disadvantage.

In *Melena,* the court held that an employee did not voluntarily agree to arbitrate her statutory cause of action after her employer instituted a new dispute resolution policy and told her that she needed to sign the acknowledgment form or be terminated. *Id.* at 833-34.The court noted that when a plaintiff is a current employee, she has "even less volition in the matter than the typical job applicant."*Id.* at 833.On the other hand, the court indicated that if the person being asked to agree to arbitration was someone in the midst of a job search, the consent may be knowing and voluntary because of the other viable options. *Id.* Further curtailing this new requirement, the court stated that "[w]here, for example, a highly skilled employee is genuinely in a position to negotiate the terms of an employment contract that contains an arbitration agreement, we might find that

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-07163   Document 15-4   Filed 07/29/2008   Page 3 of 4

Not Reported in F.Supp.2d                                                                                                      Page 3
Not Reported in F.Supp.2d, 2005 WL 1950404 (N.D.Ill.), 35 Employee Benefits Cas. 2858
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 1950404 (N.D.Ill.))**

the employee's consent was knowing and voluntary."*Id.*

*3 Relying on *Melena,* Maroney argues that he did not knowingly and voluntarily agree to arbitrate his statutory claims, which include the ERISA claim as well as his statutory state claims. *Melena'*s employment situation, however, is distinguishable from Plaintiff's. Unlike Melena, who was an hourly wage employee in a large company, Maroney was a highly skilled employee in a position to genuinely negotiate his contract as Vice President of Triple R, a relatively small corporation. Additionally, Maroney was not a Triple R employee when asked to agree to the mutual arbitration clause, but was seeking employment with the corporation. Another court in this district found the job-status distinction to be a sufficient distinguishing factor from *Melena.See Campbell v. Sterling Jewelers, Inc.,* No. 04 C 5891, 2005 WL 991771, at *3 (N.D.Ill. Apr.15, 2005).

Plaintiff's complaint fails to assert that he did not knowingly and voluntarily agree to the arbitration clause. To overcome the FAA's presumption of arbitrability on a motion to dismiss, *see Volt,* 489 U.S. at 476, Plaintiff must provide the Court with some facts to indicate or at least raise an inference that he did not knowingly or voluntarily agree to the arbitration clause. The pled facts in the complaint demonstrate otherwise. Maroney was a highly skilled employee in a genuine position to negotiate his contract before he accepted a high-level position with Triple R. Additionally, Plaintiff's response to the motion to dismiss cites to *Melana,* but does nothing further to create an inference that the signing was not knowing and voluntary. The policy driving Illinois' requirement that assent to arbitration be knowing and voluntary is not at issue here. Thus, with these facts and the lack of any other unique circumstances, the arbitration clause is enforceable against statutory causes of action, such as the ERISA claim.

B. Scope of the Arbitration Clause

Maroney also argues that the Agreement's arbitration clause fails because it is overly broad and that the ERISA claim is not covered because it arose post-termination. However, broad or generic language in an arbitration clause is not fatal to its validity because "the courts of [Illinois] favor arbitration."*Salsitz v. Kreiss,* 198 Ill.2d 1, 260 Ill.Dec. 541, 761 N.E.2d 724, 731 (Ill.2001); *see also Campbell,* 2005 WL 991771, at *1 (enforcing an arbitration clause governing "any dispute, claim, or controversy ... regarding [the employee's] employment"); *Glover v. Wolf, Webb, Burk & Campbell, Inc.,* 731 F.Supp. 292, 292 (N.D.Ill.1990) (enforcing an arbitration clause covering "[a]ny controversy arising out of or relating to" an agreement). Illinois courts construe " 'generic' arbitration clauses broadly, concluding that the parties are obligated to arbitrate any dispute that arguably arises under an agreement containing a 'generic' provision."*Bass v. SMG, Inc.,* 328 Ill.App.3d 492, 262 Ill.Dec. 471, 765 N.E.2d 1079, 1085 (Ill.App.Ct.2002) (citations omitted).

*4 The Agreement's arbitration clause states that all disputes "arising between Company and Employee out of or connected with this Agreement" are subject to arbitration. (Compl.Exh. 1). This clause is certainly generic and well within the type of enforceable clauses contemplated by *Bass.*Accordingly, any claim that arguably arises out of or is connected with the Agreement between Maroney and Triple R is within the scope of the arbitration clause.

Maroney contends that the ERISA claim is not connected with the Agreement because the claim vested post-termination-when he became ineligible for health insurance under the Plan. Maroney's argument may be correct in part-that he did not have an ERISA claim until he was denied COBRA coverage after his termination. However, the only reason Maroney presently has a litigatable ERISA claim is because pursuant to his benefits under the Agreement, Triple R provided him with obligatory medical insurance. To argue that the claim was not connected

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1950404 (N.D.Ill.), 35 Employee Benefits Cas. 2858
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 1950404 (N.D.Ill.))**

Page 4

with or did not arise under the Agreement undercuts Maroney's COBRA rights in the first place. *See Litton Fin. Printing Div. v. NLRB,* 501 U.S. 190, 205-06, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991) (holding that an unlimited arbitration clause can subject a dispute to arbitration "even in the post contract period"); *see also Miller v. Flume,* 139 F.3d 1130, 1136 (stating that "once it is clear the parties have a contract that provides for the arbitration of some issues between them, any doubts concerning the scope of the arbitration clause are resolved in favor of arbitration"). Moreover, private agreements to arbitrate ERISA claims are enforceable. *See Shearson Lehman/Am. Express, Inc.,* 493 U.S. 884 (1989)(vacating the Second Circuit's order refusing to compel arbitration of an ERISA dispute); *Glover,* 731 F.Supp. at 292 (enforcing arbitration of an ERISA dispute). Consequently, the Agreement incorporates Triple R's obligations under the Plan and is therefore a necessary predicate for enforcement of Maroney's ERISA rights. *Cf. Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 10 v. Waukesha Engine Div., Dresser Indus., Inc.,* 17 F.3d 196, 197-98 (7th Cir.1994) (finding that specific determination of medical coverage by insurer not subject to arbitration under the CBA). Maroney's ERISA claim is subject to the Agreement's arbitration clause.

### C. Pendent Claims

The remaining state-law claims of retaliatory discharge, conversion, and breach of contract arise under and are connected with the Agreement because the claims involve facts that involve the Agreement itself and arose during the course of Maroney's employment. Nothing in the record indicates waiver so that the state-law claims also are subject to arbitration. Therefore, the Court need not consider pendent jurisdiction under 28 U.S.C. § 1367.

### III. *CONCLUSION*

For the reasons set forth above, the Court submits all of Plaintiff's claims to arbitration. Accordingly, the complaint is dismissed without prejudice and Defendants' Motion to Dismiss is granted.

**\*5** IT IS SO ORDERED.

N.D.Ill.,2005.
Maroney v. Triple ""R" Steel, Inc.
Not Reported in F.Supp.2d, 2005 WL 1950404 (N.D.Ill.), 35 Employee Benefits Cas. 2858

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.